Howard Leventhal<br>
Reg No 46376-424<br>
FPC Duluth<br>
P.O. Box 1000<br>
Duluth, MN 55814

Oct 22, 2018

Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: LEVENTHAL v U.S.
18-cv-3470(BMC)
(13-cr-695(BMC))

ADDITIONAL SUPPORT FOR
IMMEDIATE RELEASE

Your Honor:

DECLARATION REGARDING UNREMEDIATED KIDNEY STONE ISSUE
You may recall that almost immediately after my remand, I wrote you on the record (Doc 73) requesting assistance with proper medication. You apparently interceded, thank you. However more or less as soon as you were no longer watching, the BOP proceeded, as is its custom, to do whatever it wanted, all of it wrong. The resultant effects are documented on the declaration attached.

MORE INEFFECTIVE ASSISTANCE: THE WOLF OF WALL STREET DISPARITY
Yet another action Zissou failed to execute, either in pre or post-judgment proceedings, was to draw a comparison between my case and that of United States v. Jordan Belfort, subject of the movie "Wolf of Wall Street," adjudicated in this district. The disparities and unfair results are astonishing.

Belfort's actual loss was about one hundred times mine. His number of victims? Two hundred times mine. Yet he received a sentence of 42 months, 2/3 the time of my sentence and the adjustment I seek now.

Yes, he "cooperated" ... by informing upon people who were not criminals before meeting him and whom he converted into fodder for the Government. Quite a Team America hero, Jordan Belfort is. Not. Moreover, nothing visible in the Belfort case suggested that he suffered from any sort of chronic medical issue. Likewise nothing in the record shows that the Government deliberately destroyed his relationship with his only child, as mine was, by the Government.

I met one of Belfort's co-defendants while at MDC Brooklyn and spoke with him at length. According to him, the depravity driven by greed, lust and narcotics depicted in the movie was understated, to avoid an "X" rating. The drivers of my criminal behavior have already been exhaustively expressed here and not even "The Government" has suggested that I conducted myself in the venal way that Belfort conducted himself in forwarding his criminal offenses. What then explains the leniency and luxuries Belfort has received?

In a 2014 supplementary proceeding, it was alleged that Belford was living a luxurious lifestyle immediately upon release. I will be living on my mother's sofa in a rent-subsidized apartment, although frankly I will be exceedingly grateful if granted the opportunity to do this while she remains alive.

Where is the difference between Belfort and I? ~~Do you~~ Does anyone believe that I am 1/2 again more toxic than he is? How is it that his sentence is at so great a disparity with mine? Answer: His lawyer was not sleeping, bought-off, writing a movie, acting in a reality TV show or otherwise distracted, as mine. This sentencing disparity is not only illegal, it is shameful and cries out now for correction, while any correction remains meaningful.

Yours truly,

SWORN DECLARATION OF HOWARD E. LEVENTHAL DATED OCT 21, 2018

I Howard E. Leventhal do hereby solemnly swear under oath and penalty of perjury pursuant to 18 USC § 1001 as follows, with respect to my self-assessment of the current state of kidney stone production in my urinary tract:

### Qualifications to Self-Assess

1) For more than 50 years I have managed my own self-care and follow-up after surgery to correct a birth defect known as "hypospadias" in my uro-genital tract. Said surgery was performed at various times in the early 1960s at Children's Memorial Hospital and Grant Hospital in Chicago.

2) While married to my third wife Malgorzata Kubiak, a registered nurse in obstetrics and gynecology, I acted as her homework coach for various continuing education courses in uro-genital systems and Advanced Critical Life Support.

3) Over a period of 35 years I assisted in the home care of my first cousin Neal Golden, a quadriplegic and first wife Judith Leventhal, afflicted with Multiple Sclerosis, both of whom required urinary catheterization for decades (see PSR and Mitigation Report, U.S. v Leventhal, 13-cr-695(BMC), United States District Court, Eastern District of New York, hereinafter the "criminal case.")

4) I have successfully completed basic physiology sections as part of the American Red Cross certifications in Basic and Advanced First Aid. After completing same I served as an assistant first aid instructor for the government of the Village of Skokie, Illinois.

5) For more than 45 years I have studied and instructed human physiology as an element of my duties as an internationally certified Taekwon-do instructor (see PSR in criminal case).

### Self-Assessment of Urinary Tract & Kidney Stones

1) Beginning approximately twelve months before my remand to Bureau of Prisons custody, I began developing kidney stones. On the same day that the examination of me was performed in the Chicago office of Dr. Andrew Albert (crim case Doc 57),

Page 1 of 3

a surgical procedure known as sistoscopy was performed on me at Weiss Memorial Hospital in the Edgewater neighborhood on the north side of Chicago. This procedure surgically removed a Calcium Oxilate Jackstone kidney stone which was occluding my urethra and preventing urine flow, because it was captured as depicted in the attached diagram, Exhibit A, at F-G-H-M. For a better understanding of the size, nature and shape of this type of stone, search Google Images for "calcium oxilate jackstone kidney stone." These are semi-rigid crystalline structures with projecting prongs, as shown in Exhibit A at F.

2)   One does not need to be a physician to discern the critical issue here, it is a matter of elementary physics. These stones become lodged in the semi-rigid stricture, a narrowed and <u>extremely unusual</u> condition among humans in general. It goes without saying that the Bureau of Prisons may have never seen another inmate similarly situated in this way, as I am.

3)   A normal male urethra inside diameter is from 4 to 6 milimeters (Exhibit A at J). The passage through which kidney stones must egress through my body is constricted by the stricture depicted in Exhibit A at G-H, which was measured at Weiss under MRI scan to be 2-3 milimeters. That such stones become lodged should be no surprise to any educated adult, an elusive characterization in the Bureau of Prisons.

4)   There is a very simple remedy which is proven in my case to prevent the growth of kidney stones to the size at which they are captured in the stricture: Regular intake of Potassium Citrate tablets or water soluable form, at the highest permissible and safe dose. As Exhibit B shows, this medication has been denied to me, not only by Dr. Benjamin Rice, Medical Director at FPC Duluth where I am currently in custody, but also since the first week of my BOP custody, see Doc 13 in my criminal case. This has been a struggle without end which will only end on whatever date the Bureau of Prisons is deprived of control of my medical care, which means only beginning at the commencement of Supervised Release as my criminal judgment of conviction dictates.

5) At the most recent instance of kidney stone passage, which took place during the 30 day period following the Exhibit B email exchange, while enduring extreme pain, I observed an outward deformation (Exhibit A at B-D-E) which felt to me in every way like urine at high pressure seeking an alternative exit from the blockage depicted at Exhibit A, F-G-H-M. After being unable to urinate at all for more than 24 hours, my bladder began a series of spasms, increasing the level of pain even further. The outward deformation became larger until finally, the stone passed. I have every reason to fear that in an instance to come in the near future, the urethral and penile walls may rupture from urine pressure seeking the path of least resistance.

6) The Bureau of Prisons knows all of the above and will not even allow me to be seen in morning sick call for it (Exhibit B, Note 1). Yet I am sent a directive as part of the "Administrative Remedy" process, as illusory a program that ever existed in government, to appear at morning sick call to deal with this issue (Exhibit C, note 1).

7) In my experience to date, there is very little anomalous about Dr Benjamin Rice at Duluth where it comes to the sordid pasts of average BOP doctors. Rice was convicted in the State of Virginia of sexually molesting his own four year old daughter. While the conviction was latter overturned on appeal, the State of Minnesota in which he now practices does not apparently take enough comfort in this to grant him a license. Rice is the subject, by his own admission, of "thousands" of "Administrative Remedy" grievances under which, according to Dr. Rice himself, not a single one has altered his abusive, oppressive and deviant judgment calls one iota. The Bureau of Prisons' Administrative Remedy Policy is an illusory, deceptive fraud upon the United States Judiciary, the Congress which allocates its funding and the hapless American citizens who come into BOP control, in my personal opinion as one who has suffered through it.

8) There is no remedy from the permanent, irreparable harm and risk thereof described above, except separating me from all forms of BOP custody, forthwith.

_____  Howard Leventhal, Declarant, 10/21/18

Page 3 of 3

ILLUSTRATION OF URETHRAL RUPTURE                                    EXHIBIT A



A – Urethreal wall at left of rupture point
B – Penile wall at left of rupture point
C – Urethral wall at right of rupture point
D – Penile wall at right of rupture point
E – Exit point of pressure-diverted urine
F – **Calcium Oxilate Jackstone kidney stone**[1]
G – Stricture, upper point
H – Stricture, lower point
J – Normal urethra interior diameter
K – Dorsal penile wall
L – Ventral penile wall
M – **Rigid surgical scar tissue** [2]

Notes
[1] See "Urinary Tract Chart," Wolters Kluwer, 1988, 2000, Knelling & McClure.
[2] See BOP Medical Record for H. Leventhal, Reg No 46376-424, copy of Univ. Chicago Hospital urologist's report.

TRULINCS 46376424 - LEVENTHAL, HOWARD - Unit: DTH-H-A

EXHIBIT B

----

FROM: Health Services
TO: 46376424
SUBJECT: RE:***Inmate to Staff Message***
DATE: 06/21/2018 10:27:02 AM

Leventhal,

I have spoken with Dr. Rice about your request. He says that he feels that your current medication regiment is sufficient for prevention of kidney stones. You are free to address this matter further at your next scheduled Chronic Care Visit. I understand your frustration, however per BOP policy as the Clinical Director Dr. Rice is the final medical authority on any and all clinical decisions.

K. Blanke, HSA

>>> ~^!"LEVENTHAL, ~^!HOWARD" <46376424@inmatemessage.com> 6/19/2018 6:55 AM >>>
To: DR Rice
Inmate Work Assignment: Unassigned

I deposited my documentation in outside mail slot, addressed to you, yesterday afternoon.
Please let me know whether or not this needs to become another lawsuit, or will the
correct med (Potassium Citrate tablets, identical to those given to former inmate G. Harriman)
be provided?

Thanks
-----Health Services  on 6/18/2018 9:57 AM wrote:

>
Leventhal,

I am confused by your email and I would like to get clarification so I can better look into the matter. You email was sent on June 16 stating that you were turned away on June 18th. I looked and there is no record of you being turned away on the 18th and thats when I noticed that the email was sent prior to that. Can you give me more info so I can better look into what happened

K. Blanke, HSA

>>> ~^!"LEVENTHAL, ~^!HOWARD" <46376424@inmatemessage.com> 6/16/2018 7:43 AM >>>
To: DR Rice
Inmate Work Assignment: Unassigned

Dr Rice:

Note the following for the record:

① Circular non-resolution, see Exhibit C, Note 1

1) Earlier this week, on 6/18/18, I appeared at your 6:20am sick call with an urgent request for prescription medicine to properly deal with an emerging kidney stone, and you refused to see me.
2) As you are well aware, because you voiced it during my last "chronic care" visit, I have a surgical scar in my urethra, amounting to a "stricture" (term you quoted out of my official BOP medical record).
3) This stricture has captured every one of the dozen or so kidney stones I have passed greater in size than 2mm. "Captured" means that about half of the kidney stones I've produced, stalled in my urethra, occluding urine flow and amplifying the pain involved by at least double. All of these kidney stones could not be removed except by surgical extraction.
4) The inexpensive prescription you have refused to provide, Potassium Citrate tablets (identical to that prescribed here by you for former inmate Greggory Harriman), is the only non-surgical medical treatment to effectively reduce or eliminate the intense pain I have experienced numerous times - and which you presently have refused to deal with in any way.
5) Your "medical opinion" on this topic is grossly invalid. To the extent it has any value at all, it is indicative of personal animus and retaliation on your part for my joining of you as a co-defendant in Leventhal v Tomford, et al, currently pending in the US Dist Court, Dist of Minnesota - which, by the way, will be the subject matter when you are called to the office over the next few business days to be served by the US Marshal.
6) I again demand a prescription for Potassium Citrate tablets, immediately. Your failure to provide same constitutes cruel and unusual punishment as the Supreme Court defined it in Estelle v Gamble, making you personally liable for money damages to

EXHIBIT C

**U. S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number**: 945623-R1

This is in response to your Regional Administrative Remedy Appeal received on July 31, 2018. You allege your primary care provider is not competent to provide medical care. For relief, you request to have your medical care transferred to a civilian medical provider.

We have reviewed the documentation related to your appeal. Based on this review, we concur with the manner in which the Warden addressed your concerns. You have consistently been provided timely and appropriate medical care in accordance with Program Statement 6031.04, Patient Care, and the National Drug Formulary. We have determined your assigned primary care team possesses the requisite skills necessary to provide safe and effective medical care. Given this, we shall defer diagnostic and treatment interventions to the Health Services staff at the local level. You are encouraged to report to sick call you feel your condition requires further evaluation or has worsened.

Based on these findings, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

8-13-18
Date

Sara M. Revell, Regional Director

*Handwritten annotations:*

① Circular non-resolution, see Exhibit B, Note 1. In fact, a more accurate descriptive name for the "BOP Administrative Remedy Policy," would in fact be "BOP Circular Non-Resolution, Delay-Them-Until-They're-Dead-or-Their-Sentence-is-Over Policy." Whatever name the policy may have "remedy" is not its zim.

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 25 2018 ★

BROOKLYN OFFICE

Howard Leventhal
Reg No 46376-424
FPC Duluth
P.O. Box 1000
Duluth, MN 55814

Oct 22, 2018

Clerk of Court
United States Dist. Court
Eastern Dist of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: LEVENTHAL v U.S.
Case No. 18-cv-3470(BMC)
(13-cr-695(BMC))

FILING

Please file enclosed in captioned matter.

Thank you,
PETITIONER/DEFENDANT pro se

Howard Leventhal

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| Leventhal | ) |
| | ) |
| | ) Case No. |
| v | ) 18-cv-3470(BMC) |
| | ) (13-cr-695(BMC)) |
| United States | ) |


NOTICE OF FILING


To: US Attorney EDNY via ECF


    Be advised that on this date I filed the accompanying letter to Judge Cogan, Sworn Declaration Dated Oct 21, 2018 and exhibits.

PET/DEF PRO SE

_____  10/21/18
Howard Leventhal           Date


CERTIFICATE OF SERVICE

    I Howard Leventhal hereby certify that I deposited copies of the above and attached with prison authorities for further deposit in U.S. postal mail at Duluth, MN, addressed to the Clerk in a prepaid envelope on 10/22/18 and further it is my understanding that all necessary parties will receive copies of same automatically in due course via this Court's ECF system.

_____
Howard Leventhal

Inmate Name ___H___
Registration # _46376-424_
Federal Prison Camp
P.O. Box 1000
Duluth, Minnesota 55814



⇔46376-424⇔
Court Clerk Brooklyn
225 Cadman PLZ E
US Dist Court EDNY
Brooklyn, NY 11201
United States



11201-183299