UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                      :
UNITED STATES OF AMERICA,            :
                                                                      :
                                   - against -                     :      **MEMORANDUM DECISION AND ORDER**
                                                                      :
                                                                      :      13-cr-0695 (BMC)
HOWARD LEVENTHAL,                      :      18-cv-3470 (BMC)
                                                                      :
                                      Defendant.                    :
                                                                           :
------------------------------------------------------------ X

**COGAN**, District Judge.

Defendant has filed a motion for habeas corpus relief under 28 U.S.C. § 2255, which he subsequently amended and supplemented,[1] a motion for "alternative relief," and a motion to "substitute" the Judge in his case. For the reasons below, each motion is denied.

## BACKGROUND

Defendant was the President, Chief Executive Officer, and Chief Technology Officer of mHealth Technologies Corp., which developed technology for the mobile health industry.

In 2012, defendant began contracting with "factoring" businesses to which he would sell in exchange for cash fraudulent multi-million-dollar accounts receivable from Health Canada – which is the department in the Canadian government with responsibility for its national public health – related to a home health tablet that his company was developing. Defendant also flouted his fake contracts with Health Canada to induce high net worth individuals and other lenders to invest in his company. Over the course of the defendant's scheme, he solicited at least

---

[1] Because of defendant's *pro se* status, the Court does not construe the amended motion or its addendum to replace his original motion under § 2255. Rather, the Court will consider the arguments that defendant raises in each filing. The Court refers to the three filings together as defendant's "amended motion."

$26 million from potential investors, and the actual loss that resulted from his fraud was more than $1.3 million.

Defendant was arrested on October 22, 2013, and on December 23, 2013, he pled guilty to wire fraud (Count 1) and aggravated identity theft (Count 2) in violation of 18 U.S.C. §§ 1343 and 1028A(a)(1), respectively. Defendant's Guidelines range for Count 1 was 87 to 108 months and he faced a mandatory 24-month consecutive sentence on Count 2. On December 6, 2016, I sentenced defendant to 36 months on Count 1 and 24 months on Count 2, to run consecutive, for a total sentence of 60 months custody. I also ordered defendant to pay restitution of $1,350,819.78.

Defendant has been in custody since September 11, 2015, when I revoked his bond because he violated several of its conditions, including by attempting to defraud an individual out of $55,000 through false representations and omissions. Defendant has less than five months left to serve on his 60-month sentence.

Defendant filed a direct appeal with respect to one of the special conditions of supervised release, but he subsequently withdrew that appeal. Defendant has not otherwise filed a direct appeal of his sentence, although in his district of confinement, he has (unsuccessfully) filed a motion for habeas corpus relief under 28 U.S.C. § 2241 to challenge, among other things, some of the conditions of his confinement related to his medical care. See Leventhal v. Rios, No. CV 17-5441, 2018 WL 3129004, at *2 (D. Minn. June 26, 2018).

However, defendant has filed several other lawsuits – including one against the prosecutor in this case, see Leventhal v. Paes, No. 17-cv-2496 (E.D.N.Y) – and as was discussed in Paes and during defendant's sentencing, plaintiff uses frivolous litigation as a weapon to

harass the people who upset him.[2] As is demonstrated below, the instant motions do not have any merit, but instead, serve as the next round of defendant's relentless attempt to lash out at others through the judicial process.

## DISCUSSION

### I. Recusal Motions

After filing his amended motion for habeas relief and motion for alternative relief, defendant filed a motion to "substitute" the Judge in his case. I construe this as a motion for recusal. This motion is denied.

Defendant has self-designated his amended motion for habeas relief an "emergency" motion and has asked me to recuse myself if my "bandwidth" does not allow me to treat his amended motion as an emergent matter. Defendant is similarly situated to every other federal prisoner who has filed motions for the same relief. I will not prioritize defendant just because he thinks his case is more important than the rest, nor will I recuse myself just because I did not address defendant's several motions on his preferred timeline.

Part of defendant's amended motion also requests that I recuse myself, claiming that I harbor a personal animus against defendant. In support of his argument, defendant includes a laundry list of his non-criminal conduct that was discussed during sentencing and assumes that I am prejudiced against him because of that conduct. Defendant's assumption is wrong. During sentencing, I must necessarily consider a defendant's other criminal and non-criminal conduct. This is not only routine, but consideration of each defendant's history and characteristics is

---

[2] Defendant also has a pending appeal in the instant case. He has appealed this Court's denial of his motion for a reduction of sentence under the First Step Act, Pub. L. No. 115-391 § 603 (2018), and to compel decision on some of the motions that are the subject of this decision. Defendant's motion for a reduced sentence also stated that if defendant received the relief sought, he would withdraw his § 2255 motion. This latter, provisional "offer" caused his appeal to be labeled as being from a decision on a § 2255 motion, and this Court therefore was contacted by the Second Circuit Clerk to grant or deny a certificate of appealability. We have explained to the Clerk that since none of this Court's prior orders before this one disposed of defendant's § 2255 motion, there was no ability to grant or deny a certificate of appealability.

statutorily required. See 18 U.S.C. § 3553(a). I have no doubt in my ability to hear and determine defendant's case in an impartial manner, see generally 28 U.S.C. § 455, so I will not recuse myself from deciding his motion.

## II. Amended Motion for Habeas Relief

Under 28 U.S.C. § 2255(a), a federal prisoner may claim the right to be released if their sentence was "imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Generally, "claims not raised on direct appeal may not be raised on collateral review unless the defendant shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). But claims of ineffective assistance of counsel can be raised for the first time in a § 2255 motion. See id.

Defendant raises several issues in his amended motion for habeas relief. For the reasons below, each point that defendant makes fails.

### A. *Conditions of Confinement*

Defendant contends that the conditions of his confinement violate the Eighth Amendment for two reasons. First, defendant argues that his confinement has severed his relationship with his daughter and deprived him of his "parental authority," because he has not seen his daughter in three years or spoken to her in two years. Defendant also argues that the Bureau of Prisons ("BOP") has denied him necessary medical care for a pre-existing medical condition that defendant had when I sentenced him.

Neither of these claims are cognizable on a § 2255 motion. That is because release from prison is not an appropriate remedy for either of these alleged constitutional violations. Cf. Jiminian v. Nash, 245 F.3d 144, 146-47 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as . . . prison

conditions. In contrast, § 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence.").

Because of this, the venue for defendant's challenge to the conditions of his confinement is only proper in the District of Minnesota, because that is where he is confined.[3] See Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas motions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

The same is true for defendant's related argument that his due process rights were violated because I sentenced him under the belief that the BOP would be able to provide him with adequate medical care and it has not. This is just another way of making the same argument – that his conditions of confinement violate the Eighth Amendment – which cannot be raised in a § 2255 motion.

### B. *Prosecutorial Misconduct*

Defendant argues that the prosecutor in his case engaged in several forms of misconduct. First, defendant claims that the prosecutor did not disclose his "knowledge" that the BOP would not adhere to defendant's medical care plan; second, the prosecutor did not forward internally defendant's FOIA request seeking communications between the prosecutor and the BOP; and third, the prosecutor did not produce pursuant to a second FOIA request his communications with defendant's ex-wife which defendant claims would have shown she was blackmailed into making the statements she made during defendant's sentencing.

The first argument is frivolous. The prosecutor has no control over the conduct of the BOP. Although defendant contends that the prosecutor must have thrown away the care plan

---

[3] I take judicial notice of the fact that defendant is being held at the Duluth FPC in Duluth, Minnesota. See https://www.bop.gov/inmateloc/ (last visited April 15, 2019).

5

created by an examining physician in advance of sentencing, defendant's relief is once again against the warden in an action under § 2241 in the District of Minnesota for a failure to provide defendant with adequate medical care. If defendant disagreed with the outcome of his prior § 2241 action in that court, his avenue of relief was to file an appeal, not raise his claims in this court in a § 2255 action.

As for the second and third arguments, I have already addressed defendant's FOIA requests when I dismissed his related lawsuit. See Leventhal v. Paes, 16-cv-3677 (E.D.N.Y. July 27, 2016). Defendant's avenue of relief was on direct appeal of that decision, not a § 2255 motion about his unrelated criminal matter. Moreover, these allegations are nothing but conjecture and do not merit additional discussion.

Defendant also claims that a federal agent "terrorized" defendant's doctor and threatened him into making false statements in a medical opinion and that the prosecutor called federal Bankruptcy Judge Goldgar and "goaded" Judge Goldgar into "hyper-inflating and exaggerating" one of his opinions, which included a finding that defendant uses litigation as a retaliatory weapon and was discussed at defendant's sentencing (which, of course, defendant contends it should not have been). Defendant includes no evidence to support these contentions, so I will not address them any further.

Finally, defendant claims that the Presentence Investigation Report ("PSR") was wrong to represent that the BOP has the resources to provide mental health treatment to defendant while he is incarcerated. Once again, this is not the responsibility of the prosecutor. Defendant must bring his claim against the warden who is holding him under conditions that defendant claims violate the constitution.

### C. Breach of Plea Agreement

Defendant claims that the Government breached the condition in the parties' plea agreement that the Government would not seek to invalidate points for defendant's acceptance of responsibility in his Guidelines calculation. Under the plea agreement, the Government agreed not to take a position concerning where within the Guidelines range defendant's sentence should fall and that it would not make a motion for an upward departure from that range. But the plea agreement also provided that that if defendant subsequently engaged in conduct that was relevant to sentencing, the Government would not be bound by those provisions. The plea agreement also provided that if defendant violated any provision of the agreement, the Government would be relieved of its obligations, explicitly including its obligation to move for a downward adjustment for acceptance of responsibility.

Because defendant attempted to defraud an individual of $55,000 while he was out on bond, it seems clear that the Government did not breach the plea agreement, but rather, it was relieved of its obligations by the terms of that contract because of defendant's breach.

### D. Ineffective Assistance of Counsel

Defendant claims that his defense counsel was constitutionally ineffective. To raise a meritorious ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984), defendant must show two things: first, that defense counsel's performance was deficient (by identifying acts or omissions that considered under all the circumstances were "outside the wide range of professionally competent assistance"), and second, that counsel's deficient performance prejudiced his defense (by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011) (quoting Strickland, 466 U.S. at 690-

94). As the Second Circuit has explained, this is a "highly demanding" and "rigorous" test. See id. (internal citations omitted).

Defendant has challenged several of defense counsel's decisions, actions, and omissions. As a general matter, it appears that defendant takes issue with the fact that counsel conducted himself according to the law as it is written, rather than the law that defendant wants to be in place. My findings as to each of defendant's challenges are as follows.

- Counsel's revelation to defendant (allegedly in violation of a court order) that defendant's ex-wife was the Government's confidential witness at defendant's bond revocation hearing has nothing to do with the sentence defendant is challenging, nor could this knowledge have prejudiced defendant in any way with respect to the outcome of his sentencing.

- Counsel's failure to move for specific performance of the plea agreement after the Government asked me to withhold points for acceptance of responsibility in defendant's Guidelines calculation did not prejudice defendant, because as the transcript of defendant's sentencing reflects, counsel did address specific performance of the plea agreement. Moreover, I expressly considered points for acceptance of responsibility and found on my own review of the facts that defendant's post-plea conduct made it clear that he had not accepted responsibility, so he was not entitled to an adjustment for that. For the same reason, I would not have required specific performance of the plea agreement, because defendant himself breached it when he committed a fraud while out on bond.

- Counsel's failure to assert the applicability of Rule 5K2.0(a)[4] of the United States Sentencing Guidelines ("USSG") was not deficient performance nor did it have a prejudicial effect on the outcome, because during sentencing, I considered extensively the evidence of mitigating factors in defendant's case, and defendant has not indicated what other facts or circumstances to which counsel should have pointed that were not taken into consideration by the USSG and that would have warranted a further downward departure from the Guidelines range.

- Counsel's failure to access the Medical Information Bureau database, which defendant argues would have proven that defendant's medical condition exists, was

---
[4] Defendant also challenges counsel's failure to assert the applicability of Rule 5K2.0(b), but because that subsection of the rule applies to downward departures in child crimes and sexual offenses, it was clearly appropriate for counsel not to address it during sentencing.

8

not deficient nor did it have a prejudicial effect on the outcome because there is and has never been a dispute about the existence of defendant's medical condition, so there was no need for additional proof on the matter. I very carefully considered defendant's serious medical condition and it was an important factor in his sentencing – had he been healthy, I have no question his sentence would have been higher.

- Counsel's refusal to serve a subpoena on the BOP for anonymous medical records of 10 random inmates with a similar medical condition to defendant was not deficient because there is no showing that a random selection of inmates' medical records would have altered the Court's reliance on the representations that the BOP could appropriately treat an individual with defendant's medical condition. These representations were not taken at face value, as defendant claims. Defendant was evaluated by an accredited medical professional who opined that the BOP could adequately care for an inmate in defendant's position. Moreover, I would have quashed this subpoena as unduly burdensome and irrelevant to the sentencing proceeding.

- Counsel's failure to object to what defendant calls a separation of powers violation – which purportedly occurred when the prosecutor dictated to the Probation Department what should go in defendant's PSR – was not deficient performance nor did it prejudice the outcome. Although defendant characterizes unidentified communications between the prosecutor and Probation as a "mandate" regarding the $26 million intended loss figure, there is no evidence to suggest such an "order" occurred (or was obeyed). The prosecutor has no legal or practical authority to compel the Probation Department to take any position on anything – the Probation Department works for the Court, not the Government – and I have seen too many cases to count where they disagreed. This was not one of them. Moreover, as the statement of reasons explains, I felt that the intended loss figure skewed the Guidelines range too high and sentenced defendant well below that range as a result.

- Counsel's failure to move for an evidentiary hearing on other relevant conduct and the 18 U.S.C. § 3553(a) factors was not deficient, as evidenced by the fact that I denied a similar motion that defendant filed himself. Moreover, because defendant does not include in his § 2255 motion who the witnesses would have been or to what they would have testified, he has not shown that this failure prejudiced him in any way.

- Counsel's conduct of purportedly shipping defendant's personal records "into a black hole," and deliberately destroying his personal property are not cognizable through a § 2255 motion because these are personal items and are in no way relevant to or

otherwise prejudice defendant's case. (The same is true for defendant's related argument that counsel failed to raise as a mitigating factor at sentencing the fact that defendant "was deprived of every last article of personal property" because of his bond revocation hearing.)

- Counsel's failure to object at defendant's bond revocation hearing to the inadmissibility of audio recordings of "interrogations" taken after defendant was arrested was not deficient, because defendant has not explained the circumstances surrounding these "interrogations" and a review of the record suggests that the only tape played was one recorded by the individual whom defendant attempted to defraud (and not a member of law enforcement). Defendant has not shown his Fourth Amendment rights were implicated.

- Counsel's failure to assert the "harshness" of defendant's presentence confinement in the Metropolitan Detention Center as a factor for me to consider in sentencing under § 3553(a) was not deficient because a review of the transcript of the sentencing proceeding reveals that counsel did in fact raise this issue. It was addressed in conjunction with defendant's medical condition as a mitigating factor warranting a variance from the Guidelines range and in conjunction with how defendant would be treated while incarcerated.

- Counsel's failure to find and bring to my attention during sentencing cases of other criminal defendants who committed similar crimes as defendant who were sentenced to less time was neither deficient nor prejudicial because defendant had the benefit of a fulsome sentencing hearing, prior to which the parties made several submissions on a myriad of issues and considerations. Sentencing a criminal defendant is necessarily an individualized endeavor, and this is particularly true in defendant's case because of several unique personal characteristics. Although I have an obligation to avoid unnecessary disparities in sentencing, defendant's unique facts and circumstances can certainly warrant a different – or longer – sentence than those imposed on other white-collar criminals (especially considering defendant continued to commit crimes while he was out on bond). Just because defendant disagrees with my decision does not mean his counsel was deficient for failing to mention every single instance in which a white-collar criminal was sentenced to less time than defendant, or that I would have sentenced defendant to less time if those cases had been cited to me.

- Counsel's failure to object to venue during sentencing was not deficient, because defendant admitted during his plea allocution that as a part of his fraudulent scheme, defendant sent a fake contract to a federal agent located in Brooklyn.

- Counsel's decision to edit the mitigation report submitted in advance of sentencing, specifically counsel's decision to remove "further elaboration on" defendant's post-traumatic stress disorder ("PTSD") diagnosis and "discussion of" defendant's father's death, which defendant claims triggered his criminal conduct, does not fall outside the realm of acceptable professional conduct, nor did it prejudice the outcome of defendant's sentencing proceeding. Defendant's own sentencing memorandum brought these issues to the attention of the Court, and defendant cannot challenge counsel's strategic decision of how much to emphasize any given point in his own submission. (For the same reason, defendant's related argument that counsel's failure to ensure that I was fully aware of the "triggering" nature of his father's death fails to rise to the level of either deficient performance or prejudicial effect under Strickland.)

- Counsel's failure to object during sentencing to my purported statement that defendant "has a serious medical condition which may require immediate response" was not deficient because the transcript shows that I never said that. I assume that defendant is referring to my consideration of his "very serious medical condition" as a mitigating factor in determining the appropriate length of his sentence, but there can be no ambiguity – as is the basis for defendant's argument here – that I was referring to defendant's known medical condition in that instance, so there was no need for counsel to object.

- Counsel's failure to file "formally captioned or formatted motion[s] or statement[s] of objections" did not prejudice defendant, because I considered every document filed, whether or not it was formatted in the manner defendant thinks it should have been.

- Counsel's failure to bring to my attention "widespread BOP medical incompetence" could not have prejudiced defendant because there was extensive discussion and consideration of his medical condition and whether the BOP could treat him during incarceration.

- Counsel's failure to file a post-judgment motion for defendant's admittance into the Residential Drug Abuse Program has nothing to do with the constitutionality of defendant's sentence, so it cannot be raised in a § 2255 motion. (The same is true for defendant's argument that counsel knew about but failed to inform defendant of the BOP's alleged violations of the Second Chance Act's mandates regarding halfway houses and home confinement. Defendant states that had he known of these violations he would have filed his § 2255 motion sooner, but the BOP's alleged conduct at large has nothing to do with defendant's sentence, so the timing of his motion does not matter at all with respect to this argument.)

- Counsel's failure to object to a victim letter provided by Gene Schenberg – despite allegedly having knowledge that Mr. Schenberg is a "professional victim," embezzled $100,000 from defendant's company, is a disgruntled former employee, and is an "outlier and a nutcase" – was not deficient because defendant provides no support for the truth of any of these statements. Moreover, defendant has not shown how counsel's failure to object to one victim statement would have prejudiced the outcome, given that the intended loss amount was calculated at over $26 million and actual loss was calculated at $1.3 million.

- Counsel's failure to inform me that, after one of defendant's fellow inmates filed a character reference letter on his behalf, the prosecutor called the inmate's lawyer and threatened him with "amplified punishment" unless he submitted a false letter claiming that his first letter was not authentic was not deficient because there is no evidence that this happened. Nor, for that matter, does it have anything to do with the constitutionality of defendant's sentence.

- Counsel's failure to object to the fact that I purportedly did not consider defendant's PTSD at sentencing and counsel's failure to assert that his PTSD warranted a downward departure under USSG § 5K2.0 was neither deficient nor prejudicial, because all of defendant's medical concerns were raised and given adequate consideration during the sentencing process.

- Counsel's failure to object to my purported use of the tem "narcissist" during sentencing was not deficient because a review of the transcript reveals that that I mentioned that one of defendant's own experts concluded that defendant has narcissistic tendencies, which is a fact from the record and not my own characterization. In any event, it is not error for a court, in evaluating a defendant's history and characteristics, to note such tendencies, with or without an expert report.

- Counsel's failure to raise as a mitigating factor during sentencing the fact that defendant must go through the process of exhausting his administrative remedies with the BOP before seeking judicial relief to resolve inmate issues was not deficient because that is the law, well known to this Court.

- Counsel's failure to follow up on defendant's offer to the Government to act as a cooperating witness to "entrap likely terrorists," despite the fact that the prosecutor seemed "willing[] to listen," has nothing to do with defendant's sentence and is not cognizable on his § 2255 motion.

- Counsel's failure to object to my intrusion on defendant's parental rights (and by extension, the interference with his ability to spend time with his daughter) during sentencing was not deficient performance (or any type of violation of defendant's

12

right to intimate association as a parent with his daughter) because it is the result of defendant's own decisions to engage in criminal conduct. Defendant committed a serious crime. He knew or should have known that he could be incarcerated as a result. Incarceration necessarily interferes with familial relationships. Defendant must deal with the consequences of his actions like any other defendant.

- Counsel's failure to object to my "erroneous dismissal" of defendant's separate FOIA lawsuit at sentencing has nothing to do with defendant's sentence or the case in which counsel represented defendant, so it cannot provide the basis for an ineffective assistance of counsel claim here.

- Counsel's failure to bring to my attention defendant's proposed alternative electronic means of deterrence, which defendant claims would have prevented him from committing additional crimes, was not deficient nor did it have a prejudicial effect on his sentence, because defendant does not explain these alternative means of deterrence. Moreover, whatever they are, they would not have adequately reflected the fact that defendant committed a serious crime for which incarceration was an appropriate and necessary punishment.

- Counsel's failure to investigate the testifying agent's allegedly false statements that he made under oath during defendant's bond revocation hearing was not deficient nor did it prejudice the outcome, because defendant provides nothing other than his assertion that the facts to which the agent testified were false, and because defendant cannot show that counsel did not investigate these matters in ways other than by calling the individuals identified in the agent's testimony (as defendant suggests he should have done).

- Counsel's failure to inform me that the Government was allegedly monitoring defendant's privileged attorney-client communications with counsel (an accusation which is supported only by defendant's own sworn affidavit attached to his amended motion) has nothing to do with the constitutionality of his sentence and is not properly raised here.

- Counsel's failure to raise the fact that defendant would frequently soil himself while in custody and suffer embarrassment in front of other inmates as a result, as well as counsel's failure to document approximately 60 (unspecified) instances where defendant was denied medical care, was neither deficient nor prejudicial because counsel, the Government, and I addressed at length defendant's medical condition and the BOP's ability to provide him with adequate care while incarcerated before and during sentencing. Defendant's complaint is against the warden holding him, not counsel. In addition, I specifically took the hardship that imprisonment would cause

13

defendant because of his medical condition into account when I sentenced him, including the specific manifestation to which he refers.

- Counsel's failure to "more energetically" object to what defendant characterizes as my failure to explore his ex-wife's grudge against him was neither deficient nor prejudicial because defendant's family structure and history were considered at length during sentencing. Moreover, defendant's qualm seems to be with the fact that he was not given a moment to interact with his daughter, allegedly because his ex-wife questioned his ability to be a good father, but that has nothing to do with the constitutionality of defendant's sentence, so it is not relevant here.

- Counsel's failure to raise the fact that defendant would be transported to custody by the "BOP's standard 'Con-Air' meat grinder" was neither deficient nor prejudicial because counsel has no control over the BOP, and more importantly, because this issue was raised and addressed during sentencing. Counsel went above and beyond that which was constitutionally required of him with respect to advocating for defendant's medical care and treatment while in custody.

- Counsel's failure to raise during sentencing the "force majeure effect of the 2008 market crash" on the need for defendant to commit the crimes that he did was not deficient because the economic crash impacted the entire country, and it was by no means an excuse to commit fraud.

- Counsel's failure to raise as a mitigating factor defendant's "overwhelming volumes of evidence" that the Attorney General has relinquished control over the BOP, which is now in control of the BOP's labor union, has nothing to do with the constitutionality of his sentence and is not properly raised in this motion, because defendant's objection relates to the BOP's purported refusal to use halfway houses.

### E. Venue

Defendant argues that venue was improper in this case. Rather than the Eastern District of New York, defendant claims that his case should have been heard in the Northern District of Illinois, because adjudicating his case in this district severed his ability to have a relationship with his daughter.

Defendant waived his right to challenge venue in his plea agreement when he agreed not to file an appeal or otherwise challenge his sentence I imposed a sentence of 132 months or

14

below.[5]  He therefore cannot raise this claim in his § 2255 motion (nor, for that matter, can he raise it for the first time under § 2255, because it is procedurally barred for having not been raised first on direct appeal).

Even assuming, however, that defendant could raise this issue in his § 2255 motion, it has no merit because defendant admitted during his plea allocution that:

> In furtherance of my financing efforts, I made use of the interstate wires, which included sending an e-mail to an undercover FBI agent in the Eastern District of New York that attached bogus agreements between my company and Health Canada for the mobile electronic medical tablet. On the bogus contracts I sent, I forged the signature of Glenda Yeates, the Canadian Deputy Health Minister, at the time, which I did without her permission or lawful authority."

I even followed up with defendant and asked, "The question is, in connection with this fraud did you mail any documents to Brooklyn?" Defendant confirmed, after speaking with his lawyer (different from his counsel at sentencing), that he e-mailed documents to Brooklyn.

According to defendant's own version of events – which he stated under oath – venue was proper in the Eastern District of New York. See Fed. R. Crim. P. 18.

### F. Sentence Disparities

Defendant argues that his sentence was erroneous in light of United States v. Klein, No. 11-CR-255, 2011 WL 6779309 (E.D.N.Y. Dec. 27, 2011), in which Judge Weinstein sentenced a criminal defendant with a panoply of health issues who pled guilty to embezzlement and tax evasion to one day of imprisonment and three years of supervised release.

Defendant cannot challenge his sentence in the first instance on a § 2255 motion. It must first be challenged on direct appeal, which defendant has not done. See Massaro, 538 U.S. at 504. To the extent defendant is precluded from challenging his sentence on direct appeal

---

[5] Separately, defendant also agreed to waive "all defenses based on . . . venue with respect to any prosecution that is not time-barred on the date that [the plea agreement] is signed in the event that . . . defendant violates [the plea agreement]."

because he waived that right in his plea agreement, defendant must accept the consequences of that decision.

Because none of the arguments that defendant raises in his § 2255 motion have merit, the motion is denied.

### III.    Motion for Alternative Relief

Defendant has also moved for alternative relief under either the Declaratory Judgment Act or Federal Rules of Criminal Procedure 33(a) and (b)(1). The bases for his motion are that a federal agent gave false testimony during plaintiff's bond revocation hearing, that the Government blackmailed defendant's ex-wife into giving false statements about him, and that the Government defrauded the Court by making false representations about the BOP's ability to care for defendant while he was incarcerated. This motion raises some of the same grounds rejected above and recharacterization does not change the result.

### CONCLUSION

Accordingly, defendant's amended motion for habeas corpus relief [186, 195, 201], his motion for alternative relief [209], and his recusal motion [217] are DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**


Dated: Brooklyn, New York                                                               U.S.D.J.
       April 17, 2019